LUCAS, D. B. A. R. M. LUCAS & COMPANY, APPELLEE, *v.*
ROSENACKER, APPELLANT.

(No. 8324—Decided December 16, 1957.)

*Mr. Stewart S. Cooper,* for appellee.
*Mr. Ewing O. Cossaboom,* for appellant.

MATTHEWS, J. This is an appeal from a judgment for $2,500 upon a check in favor of the plaintiff. The jury had returned a verdict for $250. Neither party was satisfied with the verdict, and filed motions for judgment. The motion of the defendant was overruled, and that of the plaintiff was sustained, and judgment entered in his favor for the amount of the check of which he was the payee, and the defendant was the maker or drawer.

The petition upon which this judgment was rendered was in the short form, with the additional allegation that the plaintiff was the beneficial owner of the check.

The defendant's answer contained two defenses—one in which it was alleged that the defendant intended the check to be for $250, and that the plaintiff instead inserted $2,500 and concealed that fact from the defendant; and the other defense was that the check was without consideration.

To this answer, the plaintiff, by reply to the first defense, denied the allegations of fraud and, by way of explanation of the circumstances of the giving of the check, alleged that it was given as a part of a cash payment on a contract entered into by the defendant with one Julia Huff to purchase real estate and personal property known as Huff's Dinner Bell Restaurant, and that the check was made payable to him as agent for Julia Huff, and as part payment of the total cash payment of $10,000, which defendant had agreed to pay. And, as to the second defense, the plaintiff denied that the check was without consideration, and, again, by way of explanation, alleged that he acquired title to the check, by written assignment from Julia Huff, in payment of the plaintiff's claim for a commission of $2,500 due and owing the plaintiff from Julia Huff on account of the sale of her business known as Huff's Dinner Bell Restaurant.

Two things are apparent from this explanation of the denial of want of consideration. The first is that the plaintiff, very properly, in view of the fact that he was a participant in all the negotiations, made no attempt to deny his knowledge of all the facts surrounding the giving of the check. The second conclusion must be that it must be limited to a denial of want of consideration and cannot be expanded into a plea of both a denial and a confession and avoidance, based on the rights of a bona fide purchaser for value of a negotiable instrument. And the burden of proving the defense of want of consideration is placed upon the defendant by Section 1301.30, Revised Code. See *Darby* v. *Chambers*, 70 Ohio App., 287, 46 N. E. (2d), 302, for a discussion of this subject.

The other noteworthy thing about this answer is that while it shows consideration between the plaintiff and Julia Huff, neither it nor the petition contains any allegation that the defendant wrongfully directed the dishonor of the check, which could have been predicated on either fraud or want of consideration.

As there were two affirmative defenses—fraud and want of consideration—alleged, a determination of whether the court erred in entering judgment for plaintiff, as alleged by appellant, depends on whether there is any substantial evidence in the record in support of either of those defenses. The burden of proof, that is, the burden of persuasion, of both those defenses rested upon the defendant.

There were only two persons—the plaintiff and defendant—present at the time the check sued upon and the contract of sale were delivered. Their testimony as to the circumstances is in direct conflict in most respects. They do agree that the defendant signed the check, in blank, before she met the plaintiff, and that she gave the check to him, and that he filled in the blank spaces, including the amount, in her presence. The defendant testified on the subject as follows:

"Q. Now when did you give the check? A. At the table.

"Q. Now will you tell the court and jury what was on that check at the time that you gave it to Mr. Lucas? A. Before I left home—I thought Mr. Lucas in the beginning was coming out and I had a blank—I couldn't find our original personalized joint account book, so I found a blank check and I put my signature and a later date on it because I knew I didn't have no money in the bank, and I thought, 'Well—'

"Q. You say you had no money? A. A few dollars it might have been but not enough—a hundred dollars. So I dated it for a later date, the 14th of December. I thought two days would give me a chance to get up to the bank to deposit the money and so I took the check along with me just with the date and my signature on it, and then at the table he asked me for the check and I gave it to him and thinking that he was only going to put $250 down because he said a hundred wasn't enough. I thought he was putting $250 down.

"Q. Did he say he was going to put $250 down? A. He didn't say nothing.

"Q. What did he say about how much he was filling the check out for? A. He didn't say nothing as he was filling the check out.

"Q. Why did you think it was $250? A. He had said $250. After he said a hundred dollars option wasn't enough, I said,

'How much should it be?' He said, '$250.' I thought, 'Well, I guess my son, that would be satisfactory to him.' He wanted the option and I didn't know that much. That's what I was only going under, his instructions.

"* * *

"Q. Did you tell him to fill out the amount? A. I gave him the check to fill out the amount because I didn't know at the time when I left home I was going to put his name down and I didn't know just what his first name was and I just left that thing go. I put my signature and my date on it."

By Mr. Cossaboom:

"Q. Did he show you the check— A. He did not.

"Q. Excuse me. Let me finish my question because you see the reporter has to get that down. Did he show you the amount of the check after it was filled in by Mr. Lucas? A. No, he did not.

"Q. Could you see it from where you were? A. No, I couldn't. I was still eating and I didn't—I just had—I had confidence in him as other real estate men I had in.

"Q. Now at that time had Mr. Lucas mentioned the amount of $2,500 as far as this check? A. No, sir."

The defendant also testified that she was acting for her son who wanted an option to purchase, that the check for $250 was the consideration for the option and that the plaintiff knew this.

It also appears in the testimony, without dispute, that the defendant was given no copy of the contract of sale at the time. Later, one of the copies was sent to her. This copy is hand-written, and the lines are so crossed that it is difficult to decipher. The plaintiff recognized this, and sent to the defendant a typewritten copy as he interpreted it. His explanation of the condition of the writing was that the carbon slipped, but the writing that was introduced in evidence was handwritten and does not appear to be a carbon. It contains the same defects.

There are circumstances in the record tending to support the plaintiff's testimony, and there is no doubt that the defendant became dissatisfied with the contract for other reasons before she had opportunity to know that the check called for $2,500 instead of $250.

The record, however, does not present the weight of the evidence. The question is whether there is any substantial evidence to support either or both defenses.

As we analyze the defendant's testimony, she says that the agreement was that she was to deposit $250 for an option and that she and the plaintiff had agreed that the check should be for $250, and that the plaintiff, notwithstanding, filled in the blank for $2,500, without her knowledge or consent.

If the trier of the facts believed the defendant, the fraud practiced on her was not only material, but would go to the very essence of the contract, and would establish that the minds of the parties never met.

It might very well be that the trier of the facts would disbelieve the defendant, and, if so, the judgment would be for the plaintiff. That is not the question before this court on this appeal. Rather, the question is, whether there is any substantial evidence to support the defendant's defenses. We think there is, and that the court erred in entering judgment for the plaintiff, without predicating the judgment upon a verdict of the jury, rendered upon a duly conducted trial. The trial court properly set aside the verdict for $250, as it did not in any way respond to the issues in the case.

For error in sustaining the plaintiff's motion for judgment notwithstanding the verdict, the judgment is reversed, and the cause is remanded for a new trial.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.